In re Billy Dean EPPS and Geraldine P. Epps, d/b/a Epps Insurance Agency, Debtors.

TASCOSA NATIONAL BANK OF AMARILLO, Plaintiff,

v.

Billy Dean EPPS and Geraldine P. Epps, and Kenneth Weston, Trustee, Defendants.

Billy Dean EPPS and Geraldine P. Epps, Plaintiffs,

v.

TASCOSA NATIONAL BANK OF AMARILLO, Defendant.

Bankruptcy Nos. 282–00109.
Adv. Nos. 282–0073, 282–0076.

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

Nov. 1, 1982.

John C. Chambers, and Mark L. Mosley, Chambers & Sturgeon, Amarillo, Tex., for Tascosa National Bank of Amarillo.

John J. Wheir, Amarillo, Tex., for Billy Dean and Geraldine P. Epps, debtors.

Kenneth E. Weston, Lumpkin, Barras, Reavis & Bunkley, Amarillo, Tex., for Kenneth Weston, trustee.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

The debtor, Billy Dean Epps, all times relevant to this memorandum, had conducted a general insurance business in Amarillo, Texas, under the common name and style of Epps Insurance Agency. Between September 11, 1979, and September 4, 1981, the debtors had executed four separate notes to Tascosa National Bank of Amarillo ("Bank") upon which an accumulated principal balance of $131,360.59 is owed. In connection with the delivery of those notes the debtors had executed assignments and security agreements, containing "other indebtednesses" or "dragnet" clauses so that the balance on each note was intended to be secured by certificate of title liens against three automobiles, assignments of the debtors' interest in a retirement plan with Southland Life Insurance Company, assignment of future renewals of Southland Life Insurance Company policies and future renewals of Philadelphia Life Insurance Company policies, assignments of one share of Tascosa Country Club stock, one thousand shares of Naturizer, Inc. common stock, three hundred shares of Amarillo Equity Investment Company common stock and pledges of several items of jewelry and coins, including one ten carat gold diamond ring, one fourteen karat multi-diamond ladies ring, one mounted twenty gold piece necklace, three sets of silver Olympic coins, and ten rolls of various silver coins.

The debtors filed petition for order for relief under Chapter 7 of Title 11, United States Code, on July 15, 1982. The bank filed a complaint for modification of the automatic stay in order that it could foreclose its claimed liens against all of its security. The debtors do not oppose the requested relief concerning the certificate of title liens against the three automobiles and the pledges of the shares of stock and the coins. However, they contend that the bank's nonpossessory, nonpurchase money lien against the jewelry should be avoided under § 522(f), that the bank has no lien against the retirement plan, and that the bank has not properly perfected a lien against the commission from future renewals of insurance policies. Alternatively, the debtors say that the commissions on future renewals of insurance policies are exempt as current wages under V.A.T.S. art. 3836(a)(7), that the commissions on future renewals are not presently in existence and if the bank ever had a properly perfected lien against the future renewals its debt has been discharged, there can be no lien without a debt, and that when those future renewals come into existence the bank will have no interest in them. The trustee adopts the debtor's argument concerning the validity of the bank's lien and the alternate argument that there can be no lien without a debt, but challenges the debtor's entitlement to an exemption in those commissions on future renewals. The two adversary proceedings and the trustee's challenge to exemptions were consolidated for nonjury trial. The following summary constitutes the findings of fact.

■ During the trial the bank acknowledged that it was making no claim of security interest in and to the Southland Life Insurance Company Retirement Thrift Plan and recognized debtor's exemptions in that retirement plan, free and clear of any claim by the bank. The proof at trial further

reflected that the jewelry was pledged to the bank and has remained in the possession of the bank since the pledge agreement was executed. Pretermitting consideration of the issue as to whether jewelry of the nature of that pledge to the bank can be exempt under the claim advanced by the debtors it is apparent that while the bank's lien is a nonpurchase money lien, it is not a nonpossessory lien. Therefore § 522(f) has no application and the bank's lien against the jewelry has been properly perfected by possession.

The issue between all three parties to be resolved by this memorandum is the status of the future commissions on insurance renewals. The nature of those renewals must be considered.

A life insurance agent who arranges for an insurance contract on the life of his customer receives a commission from the company when the insurance policy is written and the initial premium is paid. Moreover, if the agent's contract with the insurance company so provides, he is entitled to future commissions each time the policy holder renews the policy and pays the renewal premium. The agent's right to renewal commissions depends upon the contract existing between the agent and the insurer. The contracts between the debtor as agent and Southland Life Insurance Company and Philadelphia Life Insurance Company were not introduced at the trial, and no issue has been raised as to the debtor's legal right to renewal premiums. Therefore, it is presumed that there are presently in existence policies of insurance which were produced by the agent and which entitle the agent to receive commissions for renewals. Whether or not the agent, or his assignee, receives renewals commissions in the future depends, of course, upon the decision of the insured to retain the policy in effect for another period of time by paying the requisite renewal premium.

The trustee and the debtor each contends that the bank has not properly filed under Article 9 of the Uniform Commercial Code and thus it has perfected no lien against the future renewals. The bank re-sponds, however, that it has a written assignment of the commissions on future renewals which the debtor, Billy Dean Epps, had executed and delivered to the bank, and that each insurance company has consented to the assignment. It contends that Tex. Bus. & Com.Code § 9.305 provides, in part, that if the collateral is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. Under the facts of this case I find that the bank has properly perfected a security interest in the commissions on renewals by the acceptance of the written assignment and by its obtaining the written recognition by each insurance company of the bank's assignment. *See Tigert Printing Company, Inc. v. Comptroller of Public Accounts,* 5th Cir. 1981, 648 F.2d 364; *Central National Bank v. Latham,* 22 S.W.2d 765, 768 (Tex.Civ. App.—Waco 1929, writ ref'd).

The critical issue is the time the bank's security interest in the commissions from policies to be renewed in the future came into existence. If that security interest against future renewals does not become effective until the insured decides to renew the policy and pays the premium there can be merit to the position advanced by the trustee and by the debtors that a security interest attaches only to property in esse, that when the property comes into existence there will be no debt which would support a lien, and thus that the bank can make no claim against the commissions for future renewals. However, in my opinion the bank has already perfected its security interest in those commissions, if any, on premiums to be paid in the future. The contract between the debtor and each insurance company established the basis for the existence of a property right. That property right then came into existence each time the debtor-agent produced a policy of insurance which could be renewed in the future. As a renewable policy was solicited by the agent and issued by the insurance company the debtor's property right to renewal commissions each time the policy was renewed came into existence. That property right was assigned to the bank and the bank's security interest in the commissions became

perfected each time a policy was written which could be renewed in the future by the insured.

I conclude, therefore, that the bank's security interest is perfected in the future renewal commissions and that the bank must prevail against the trustee and the debtor as far as those renewal commissions are concerned.

It is, therefore, ORDERED by the Court that:

1. The interest of the debtors, Billy Dean Epps and Geraldine P. Epps, in and to the Southland Life Insurance Company Retirement Thrift Plan be, and it is hereby, recognized and perfected, free and clear of any claim of the bank;

2. The security interest of the bank in and to the automobiles, shares of stock, coins, jewelry, and commissions for future renewals of policies be, and it is hereby, recognized and perfected; and

3. The automatic stay heretofore existing be, and it is hereby, modified to permit the bank to foreclose its liens against the property described in paragraph two above.

LET JUDGMENT BE ENTERED ACCORDINGLY.